THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **PEDRO E. TORRES ROMAN, et al.,**<br><br>**Plaintiffs,**<br>v.<br><br>**BENITO A. MARTINEZ OCASIO, et al.,**<br><br>**Defendants.** | Civ. No. 21-1621 (ADC) |

## OPINION AND ORDER

Pending before the Court are defendants' motions to dismiss. **ECF Nos. 21, 27**. For the reasons stated herein, defendants' motions to dismiss are **DENIED WITHOUT PREJUDICE**, **ECF Nos. 21, 27.**

I.  **Procedural and factual background**[1]

Plaintiffs Pedro E. Torres-Román, Mario Resende-González and Antonio Moll ("plaintiffs"), Puerto Rico visual artists, filed a complaint against several defendants. *See* **ECF No. 8**. Plaintiffs claim that their art "increase[s] the aesthetic appeal of communities and has particularly helped [] Santurce," Puerto Rico. *Id.*, at 2. Moreover, they claim to "use street art to revitalize Santurce's abandoned buildings and deteriorated public areas… [giving] residents a

---

[1] Strictly based in the allegations within the complaint.

renewed sense of ownership over public spaces." *Id*. By doing so, according to plaintiffs, they "improved the local aesthetic," which in turn helped "attract[ing] visitors" to Santurce. *Id.*

In 2014, plaintiffs "took the initiative of restoring the purpose and aesthetic appeal of the community's outdoor basketball court located" in Canals street, next to one of Santurce's biggest attractions, the "Placita de Santurce." *Id.* With their own money, plaintiffs "proceeded to design and paint a 2-dimensional work of visual art on the walls in and around the neighborhood's basketball court" (the "mural"). *Id*., at 3.

Defendants, "urban music artist" known as "Bad Bunny," his manager, and a couple of limited liability companies related to their businesses, "went to the Santurce basketball court where [plaintiffs'] copyrighted work is located and filmed and reproduced the [m]ural for the video of one of Bad Bunny's songs." *Id*., at 5.[2] "[A]round December 25, 2018, [d]efendants distributed and publicly displayed the video consisting of a static camera shot of" the mural. *Id*. The complaint goes on to allege that the mural is the "centerpiece, focal point and only creative element[,]" of the music video and is displayed "throughout the totality of the video." *Id*., at 6. The music video amassed 9.2 million views on social media (YouTube) in less than 3 months and reached 15,422,615 million views in less than 10 months. *Id*.

---

[2] The mural appears depicted in a video recording of the song "Ser Bichote" by Bad Bunny. The artist decided to record the music video in the public basketball court located in Canals Street, Santurce, Puerto Rico. The parties do not assert whether defendants obtained the Municipality's authorization to record within such location, though a public space.

Plaintiffs filed suit in this Court because "none of the [d]efendants have acknowledged wrongdoing or compensated plaintiff artists for the willful and unlawful commercial use of [the mural,] [plaintiffs] Copyrighted Work." *Id*. The complaint is a "straightforward copyright infringement action for misappropriation of their original artwork and seek monetary relief for [d]efendants' intentional infringement of [plaintiffs'] copyright in [the mural]," pursuant to the United States Copyright Act, 17 U.S.C. §101, et seq. ( "Copyright Act"), and for the "violation of the Puerto Rico Moral Rights Act, Act 55 of March 9, 2021, as amended and the violation of Article 1802 of the Puerto Rico Civil Code." *Id*., at 6-7.

Defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). **ECF Nos. 21, 27**. Plaintiff filed an omnibus response at **ECF No. 31**. Defendants replied. **ECF Nos. 36, 37**. Plaintiffs filed a sur-reply. **ECF No. 41**.

## II.    Legal standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). When ruling on a motion to dismiss for failure to state a claim, a district court must "ask whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor." *Cooper v.*

*Charter Communications Entertainments I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014) (*citing Maloy v. Ballori-Lage*, 744 F.3d 250, 252 (1st Cir. 2014)) (internal quotations marks omitted).

"To cross the plausibility threshold, the plaintiff must 'plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Cooper*, 760 F.3d at 106 (*citing Maloy* 744 F.3d at 252). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

### III. Discussion

For many years, architectural work did not enjoy protection under the Copyright Act. The reason for the lack of protection was simple, buildings were considered to be "useful articles," such as, among others, automobiles and television sets. *See Gay Toys, Inc. v. Buddy L. Corp.*, 703 F.2d 970, 973 (6th Cir. 1983). This reasoning was in line with the perception that "[a]rchitecture is a public art form." *Leicester v. Warner Bros.*, 232 F.3d 1212, 1217 (9th Cir. 2000)(quoting H.R. Rep. 101–735, at 22).

However, in 1990, Congress vested architectural work with limited protection under the Copyright Act by enacting the Architectural Works Copyright Protection Act (the "AWCPA"), 17 U.S.C. §120. Among other considerations, this limitation on copyright protection responds to

the public purposes architectural work serves. After all, "[m]illions of people visit our cities every year and take back home photographs, posters, and other pictorial representations of prominent works of architecture… These uses do not interfere with the normal exploitation of architectural works." *Leicester v. Warner Bros.*, 232 F.3d at 1217 (quoting H.R. Rep. 101–735, at 22).

Accordingly, the 1990's "new category of copyright protection for works of architecture… did not afford architectural works full copyright protection." *Leicester*, 232 F.3d at 1217. Other courts within this district have explained that, unlike other types of works protected under the Copyright Act, "the Copyright Act specifically permits the making, distribution, and display of photographs showing the building in which the work is embodied if it is located in or visible from a public place." *Landrau v. Solis Betancourt*, 554 F.Supp.2d 102, 113 (2007)(citing 17 U.S.C. § 120(a)). This carve-out in the law has been generally known as the "pictorial representation." 17 U.S.C. § 120(a)("Pictorial Representations Permitted"). Therefore, although since 1990 architectural work gained copyright protection, this protection cannot overstep the right of a third party "to mak[e], distribut[e], and display [] photographs showing the building in which the work is embodied if it is located in or visible from a public place," 17 U.S.C. § 120(a), which brings us to defendants' motions to dismiss at **ECF Nos. 21, 27**.

In essence, defendants argue that plaintiffs' sole federal claim is barred by AWCPA. **ECF Nos. 21, 27**. They argue that the AWCPA "protects from liability the taking of photographs or video recordings of publicly visible buildings, regardless of whether those buildings incorporate

any otherwise copyright protected pictorial, graphic, or sculptural ("PGS") works." **ECF No. 21** at 6. Thus, according to defendants, plaintiffs fail to state a claim for relief under the Copyright Act because the "alleged conduct is lawful and protected under" AWCPA. **ECF No. 27** at 5.

On the other hand, plaintiffs counter that the basketball court's walls they painted over are not a "building" nor "qualif[y] as a protected 'architectural work.'" **ECF No. 31** at 2, 12-13. Even if it qualified as a an "architectural work," plaintiffs argue, the mural is "not an integral part of the basketball court's architecture that it forms part of one unitary architectural work." *Id*. Therefore, plaintiffs argue that defendants' arguments are meritless.

Although these arguments seem to be simple at a first glance, the deeper the Court looks into the matter the more complex the legal issues become.

### A.     Legality of the mural

Although not specifically raised by the parties, the Court deems it proper to flag a threshold issue. To wit, the complaint lacks well-pleaded allegations indicating whether plaintiffs are the co-owners of the mural, secured a license or consent from its owner, or were otherwise authorized to paint it over the walls of the basketball court.

Moreover, according to several allegations in the complaint, plaintiffs seem to suggest that the Municipality of San Juan owns the basketball court and, thus, its enclosing walls. Yet, plaintiffs failed to state factual allegations of any kind implicating authorization to paint the mural over the municipality's property (presumably) or otherwise having a right to paint and

work over those walls.[3] Neither do plaintiffs argue that, despite the lack of authorization or right to paint the mural over San Juan's property (if that were the case), they are entitled to protection under federal law and, thus, entitled to relief. [4]

Regardless of whether the basketball court's walls are property of the municipality or some other unknown third party, the question remains: is the mural an act of vandalism,[5] fruit of trespass, or in a more general sense, an illegal act. This issue raises yet another legitimate question. To wit, are plaintiffs entitled to copyright protection even if the mural is illegal? And more importantly for purposes of this litigation, would that illegal act interfere with a third party's right to "mak[e], distribut[e], or publicly display []pictures, paintings, photographs, or other pictorial representations of the [building] if the building in which the work is embodied is located in or ordinarily visible from a public place"? 17 U.S.C. § 120(a).

This legality issue, not specifically raised by any party, is not marginal. The First Circuit has held that "[o]ne infringes a copyright when he or she violates one of the exclusive rights to a work held by a copyright owner, and the owner has the right to sue for infringement." *T-Peg*,

---

[3] Plaintiffs admit that they "use street art to revitalize… deteriorated public areas […]."

[4] "Santurce was known as the dangerous neighborhood of San Juan due to the high rate of crime and drug trafficking. Santurce was neglected by local government." **ECF No. 8** at 2. However, in their sur-reply, plaintiffs try to benefit from the ambivalence of their own allegations by conveniently arguing that there are "no allegations in the… amended complaint as to the ownership… of the basketball court." **ECF No. 41** at 2. Plaintiffs are warned that this Court will not tolerate dancing around the truth as a litigation strategy. *See* Fed. R. Civ. P. 11(b). Plaintiffs may have not known the identity of the owner or owners of the walls, but they surely know whether the owner provided authorization for the mural or not.

[5] The walls of the basketball court were painted with two-dimensional works of visual art or paintings similar to the ones depicted in plaintiffs' mural (and signed by their putative authors), yet plaintiffs deemed the walls "abandoned, **vandalized** and trashed." Plaintiffs painted over a previously existing "mural." **ECF No. 8** at 3 (emphasis added).

*Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 108 (1st Cir. 2006). "To establish copyright infringement under the Copyright Act, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Id*. Thus, several threshold questions loom: (i) do plaintiffs have ownership of a copyright? (ii) Is it valid copyright?  Does the "owner [have] the right to sue for infringement"?

These important questions aside--none of which can be answered at this stage--, the Court must deny without prejudice the motions to dismiss for the following reasons.

B.     **Architectural work**

The law is quite clear, the "copyright in an architectural work… **does not include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work**, if the building in which the work is embodied is located in or ordinarily visible from a public place." 17 U.S.C. § 120(a)(emphasis added). Yet, here, plaintiffs think they are entitled to file suit for copyright infringement despite the plain text of the law. Plaintiffs' main argument against dismissal stands for the proposition that the basketball court at issue is not "architectural work" and cannot be deemed as such pursuant to the allegations in the complaint. **ECF No. 31** at 12. Plaintiffs further assert that the walls were built before the mural was painted. Therefore, plaintiffs' argument continues, even if the walls were "architectural work," the mural does not "form part of the original design." *Id*.

In support of their opposition to defendants' motions to dismiss, plaintiffs cite *Gaylord v. United States*, 595 F.3d 1364, 1371 (Fed. Cir. 2010) and *Moser Pilon Nelson Architects, LLC v. HNTB*

*Corp.*, No. 05-422 (MRK), 2006 WL 2331013, at *6 (D. Conn. Aug. 8, 2006). According to plaintiffs, *Gaylord* is persuasive because the court determined that the Korean War Memorial in Washington D.C. was not a "building and therefore not an architectural work subject to [17 U.S.C. §] 102(a)." **ECF No. 31** at 14-15.

Plaintiffs also cite *Moser*, arguing that the parking garage (which the court found to be an "architectural work") is substantially different from the Canals' basketball court in this case. Specifically, plaintiffs argue that *Moser Pilon Nelson Architects, LLC* supports the conclusion that for a building to fall within § 102(a), it needs a "roof," which the Canals' basketball court lacks. *Id.*, at 15. Finally, plaintiffs generally contend, without further discussion, that the basketball court in this case is not "intended for occupancy" and, thus, not within the "architectural work" scope. *Id.*

However, there are no well-pleaded allegations in the complaint (documents or photographs incorporated therein) stating sufficient facts to assume or infer that the walls enclosing the basketball court cannot meet the "architectural work" bar. Notably, without deciding it (because it is impossible at this stage), those cases seem to be far off the mark and easily distinguishable from the facts in this case. But even if plaintiffs' legal citations were on-point, the Court is unable to apply them here. To wit, the Court has no elements to decide whether the walls at issue in this case require a test similar to the Korean War Memorial in Washington D.C. or the building in *Moser*, since it has no information whatsoever regarding

elemental questions such as, in general: what purposes do the walls serve? Are they part of a larger design? Why were they erected? Who designed them?

Indeed, the Court is unable to make a ruling on the matter considering, among others, that "architectural work" is defined as the "design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features." 17 U.S.C. § 101. Clearly, at this early tier of the litigation and in light of the record as developed so far, the Court is unable to decide as to these or any elements. Therefore, thus far, the Court is not convinced that dismissal is warranted.

C. **Individual liability**

Defendants also contend that the allegations in the complaint fail to state a claim for relief against co-defendant Martínez-Ocasio in his individual capacity. **ECF No. 27** at 9. Although very thin, there are some allegations in the complaint, which read in the light most favorable to plaintiffs, state a plausible claim for relief against co-defendant Martínez-Ocasio if, and only if, the Court eventually determines that defendants' are not excluded from copyright liability by the "pictorial representation," which, once again, *"permits"*[6] "the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a

---

[6] (Emphasis added). 17 U.S.C. § 120(a) is titled "Pictorial Representations Permitted."

public place."⁷ Without a more developed record, defendants' request for dismissal as to co-defendant Martínez-Ocasio is **DENIED WITHOUT PREJUDICE.**

D. **State law claims**

Alternatively, defendants move to dismiss plaintiffs remaining claims, which are all grounded on Puerto Rico law, specifically the Moral Rights Act and the Puerto Rico Civil Code. However, because the Court only has pendent jurisdiction over these claims, defendants' motion to dismiss, as they pertain state law claims, is also **DENIED WITHOUT PREJUDICE** at this stage subject to this Court's ruling on plaintiffs' federal law claim.

E. **Attorney's fees and injunctive relief**

Plaintiffs concede that they are not entitled to attorney's fees under the Copyright Act as they claim in their complaint. *See* **ECF No. 31** at 25. Therefore, plaintiffs' claims for attorney's fees under the Copyright Act is hereby **DISMISSED WITH PREJUDICE**.

Finally, plaintiffs make a perfunctory argument against dismissal of their request for injunctive relief. *See* **ECF No. 31** at 28.⁸ Indeed, aside from a block quote, plaintiffs did not include a single line of discussion explaining why under the applicable law or equity they are entitled to injunctive relief, which plaintiffs acknowledge is an "extraordinary" relief. *Id*. Because injunctive relief is indeed extraordinary, the Court will address whether it is necessary or not for this case on its own.

---

⁷ *Id*.
⁸ Defendants' argument is not better. *See* **ECF No. 27** at 16.

First of all, plaintiffs made absolutely no showing that a preliminary injunction is warranted. As a matter of fact, plaintiffs did not request a preliminary injunction in their complaint. Neither did plaintiffs argue in favor of preliminary injunction in their response to the motion to dismiss. Indeed, their arguments were limited to their request for permanent injunction. *See* **ECF No. 31** at 27-28; **ECF No. 8.** Therefore, this Court is not called to rule upon a request for preliminary injunctive relief, as no such request has been properly submitted to the Court. Plaintiffs' request for permanent injunction will be addressed in due course and only if the Court determines plaintiffs have a federal law claim and thus, federal question jurisdiction.

## IV.  CONCLUSION

For all the above, the Court must **DENY WITHOUT PREJUDICE IN PART and GRANT IN PART** defendants' motions to dismiss (as it pertains to the request for attorney's fees and preliminary injunctive relief). **ECF Nos. 21, 27**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 3rd day of March, 2023.

                                                **S/AIDA M. DELGADO-COLÓN**
                                                **United States District Judge**